ORIGINAL
FILED IN OPEN COURT
U.S.D.C. Atlanta

MAR 4 2008

JAMES N. HATTEN, Clerk
By: [signature]
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL INFORMATION |
| v. | : | |
| | : | NO. 1:08-CR-082-CC |
| CHRISTOPHER STOUFFLET | : | |

THE UNITED STATES ATTORNEY CHARGES THAT:

### INTRODUCTION

At times relevant to this Information:

### CONTROLLED SUBSTANCES ACT

1. The Controlled Substances Act governed the manufacture, distribution, and dispensing of controlled substances in the United States.

2. Various prescription drugs were scheduled substances under the Controlled Substances Act. There were five schedules of controlled substances - schedules I, II, III, IV, and V. Drugs were scheduled into these levels based on their potentiality for abuse, among other things. Abuse of Schedule III drugs may lead to moderate or low physical dependence or high psychological dependence. Abuse of Schedule IV drugs may lead to more limited physical dependence or psychological dependence relative to the drugs or other substances in Schedule III. 21 U.S.C. §§ 812(b)(3) and (4).

3. Title 21, Code of Federal Regulations, Section 1306.04(a)

provided:

> A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

4. Phentermine, a stimulant, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(e)(9). Adipex-P was a brand name for a prescription drug used for weight loss that contained Phentermine, and was therefore classified as Schedule IV controlled substances.

5. Phendimetrazine, a stimulant, was classified under federal narcotics laws as a Schedule III controlled substance. 21 C.F.R. § 1308.13(b)(5). Bontril was a prescription drug used for weight loss that contained phendimetrazine, and was therefore classified as a Schedule III controlled substance.

6. Sibutramine hydrochloride, a stimulant, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(e)(11). Meridia, a prescription drug used for

weight loss, contained sibutramine hydrochloride, and was therefore classified as a Schedule IV controlled substance.

7.  Defendant CHRISTOPHER STOUFFLET was the majority shareholder, owner, operator, corporate officer, and/or director of businesses located in the Northern District of Georgia, that operated websites through which the defendant and his co-conspirators distributed and dispensed controlled substances and other prescription drugs, and laundered the proceeds thereof. Some of these businesses included escripts-md.com, myemd.com, Lifespan, and Virtual Wellness Networks.

## COUNT ONE
### (Conspiracy)

8.  The factual allegations of paragraphs 1 through 7 above are realleged and incorporated herein by reference.

9.  Beginning in or before July 2001, the exact date being unknown, and continuing until in or about December 2003, in the Northern District of Georgia and elsewhere, defendant CHRISTOPHER STOUFFLET, did combine, conspire, confederate, agree, and have a tacit understanding with TROY SOBERT, ERIN RIGGINS, VLADIMIR ANDRIES, M.D., THU ANH HOANG, M.D., D.S. HOLLIS, M.D., AHSAN U. RASHID, M.D., ANDRE D. SMITH, M.D., and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is, to distribute and dispense Schedule III and IV controlled substances, including but not limited to, quantities

of the following controlled substances: (1) Phentermine (including brand name Adipex-P), a Schedule IV controlled substance; (2) Phendimetrazine (brand name Bontril), a Schedule III controlled substance; and (3) sibutramine hydrochloride (brand name Meridia), a Schedule IV controlled substance, other than for a legitimate medical purpose, and not in the course of professional practice, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D), and 841(b)(2), and Title 21, Code of Federal Regulations, Section 1306.04.

### PURPOSE OF THE CONSPIRACY

10. It was the purpose of the conspiracy to sell, via the Internet, controlled substances to consumers in the United States. To maximize profit, defendants used mass e-mailings, advertising, and other marketing schemes to sell large quantities of controlled substances to customers through the websites. Defendant and his co-conspirators' process for selling drugs violated the federal requirement under the Controlled Substances Act that controlled substances be dispensed only for a legitimate medical purpose and in the usual course of professional medical practice.

### MANNER AND MEANS OF THE CONSPIRACY

11. It was a part of the conspiracy that the conspirators illegally dispensed controlled substances through several businesses using a variety of Internet websites. On these websites, the conspirators advertised various controlled

substances. Some of the controlled substances defendants offered were drugs commonly known as Phentermine, Bontril, Adipex, and Meridia.

12. It was further part of the conspiracy that the conspirators obtained information from customers over the Internet, using an online ordering process. In this ordering process, customers filled out an online order form and chose the type, quantity, and dosage of the controlled substance the customer wished to purchase. Customers also answered questions about their medical conditions. No one associated with the conspirators checked the accuracy of the information customers provided, including their identities, ages, and qualifying medical conditions, such as weight.

13. It was further part of the conspiracy that the customers provided credit card billing information at the time they completed the online order form.

14. It was further part of the conspiracy that the websites stated that a physician would review the online order form and determine whether to authorize the distribution and dispensing of the requested drugs before conspirators sent the drugs to the customers. Physicians had no face-to-face contact with the customers, who lived throughout the United States. The conspirators caused the controlled substances to be distributed and dispensed to customers without: an adequate patient history;

performing a mental or physical exam; using appropriate diagnostic or laboratory testing; or providing a means to monitor medication response. Generally, the order form was the only contact with the customer.

15. It was further part of the conspiracy that defendant CHRISTOPHER STOUFFLET and co-conspirators TROY SOBERT and ERIN RIGGINS were owners, operators, corporate officers, directors, and managers of the companies that operated certain of the websites through which defendants sold and distributed controlled substances.

16. It was further part of the conspiracy that co-conspirators VLADIMIR ANDRIES, M.D., THU ANH HOANG, M.D., STEVEN DANIEL HOLLIS, M.D., AHSAN U. RASHID, M.D., and ANDRE D. SMITH, M.D., were physicians who authorized the distribution and dispensing of controlled substances, including Phentermine, Meridia, Bontril, and Adipex, to Internet customers. Co-conspirators VLADIMIR ANDRIES, M.D., THU ANH HOANG, M.D., STEVEN DANIEL HOLLIS, M.D., AHSAN U. RASHID, M.D., and ANDRE D. SMITH, M.D., had no face-to-face contact with these customers. The controlled substances were distributed and dispensed for other than a legitimate medical purpose and not in the usual course of professional practice.

17. It was further part of the conspiracy that prior to Spring 2001, co-conspirator STOUFFLET founded, owned, and operated

Youthspan, through which STOUFFLET, aided and abetted by others, dispensed testosterone and human growth hormone over the Internet through a website named LIFESPANLONGEVITY.COM. In or about June or July 2001, STOUFFLET changed the company from Youthspan d/b/a Lifespan to eScripts through which STOUFFLET, and co-conspirators TROY SOBERT and ERIN RIGGINS, aided and abetted by each other and by others known and unknown to the United States, dispensed controlled substances, including but not limited to Phentermine, by obtaining prescriptions without the customers entering into a legitimate doctor-patient relationship. By on or about March 1, 2003 the Defendants moved offices and renamed the company Virtual Wellness Networks, while operating the same or similar business. Youthspan d/b/a Lifespan, eScripts, and Virtual Wellness Networks each operated out of offices located in the Northern District of Georgia.

### The Affiliate Program

18. It was further part of the conspiracy that defendant CHRISTOPHER STOUFFLET, and co-conspirators TROY SOBERT and ERIN RIGGINS, entered into marketing agreements with persons and entities known and unknown to the Grand Jury, in order to increase sales of controlled substances. These marketing arrangements were known as "affiliate" or "partner" programs. A person who became an "affiliate" or "partner" could earn commissions on sales generated from customers who linked to defendants' websites through the

"affiliate" website. Affiliate website were paid a commission for completed drug orders.

19. It was further part of the conspiracy that defendant and co-conspirators received payment for controlled substance drug orders from customers in various ways, including by credit cards.

20. It was further part of the conspiracy that from the time period of in or about July 2001, through in or about December 2003, defendant and co-conspirators distributed and dispensed through their Internet application process at least 260,000 prescriptions, including at least 5,600 prescriptions units of Schedule III substances and at least 150,000 prescriptions of Schedule IV substances on the basis of the authorizations of the physicians associated with the websites.

21. It was further part of the conspiracy that from on or about February 13, 2002, the exact date being unknown to the United States, until in or about December, 2003, defendant, co-conspirators, and others generated sales in excess of $75 million.

### OVERT ACTS

22. In furtherance of the conspiracy and to achieve the objects thereof, the conspirators committed the following overt acts, among others, within the Northern District of Georgia and elsewhere:

23. On or about the dates listed below, in the Northern District of Georgia and elsewhere, defendant CHRISTOPHER STOUFFLET,

aided and abetted by TROY SOBERT, ERIN RIGGINS, VLADIMIR ANDRIES, M.D. (Overt Act (b)), and ANDRE D. SMITH, M.D. (Overt Acts (a) and (c)) and by others known and unknown to the United States, knowingly and intentionally, distributed and dispensed, and caused to be distributed and dispensed, a quantity of a controlled substance for other than a legitimate medical purpose and not in the usual course of professional practice, as charged in the chart below, each such instance being a separate Overt Act in furtherance of the conspiracy, and in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(2); Title 18, United States Code, Section 2; and Title 21, Code of Federal Regulations, Section 1306.04:

| OVERT ACT | DEFENDANT and CO-CONSPIRATORS | DATE | CONTROLLED SUBSTANCE DISTRIBUTED AND DISPENSED |
|---|---|---|---|
| (a) | CHRISTOPHER STOUFFLET, TROY SOBERT, ERIN RIGGINS, ANDRE D. SMITH, M.D. | 09/16/2003 | Received in Atlanta, GA, 30 doses of Phentermine 37.5 mg, prescribed by Andre D. Smith, M.D., dispensed to R.A.K., Atlanta, GA |
| (b) | CHRISTOPHER STOUFFLET, TROY SOBERT, ERIN RIGGINS, VLADIMIR ANDRIES, M.D. | 10/01/2003 | Received in Atlanta, GA, 30 doses Phentermine 37.5 mg, prescribed by Vladimir Andries, M.D., dispensed to K.M., Atlanta, GA |
| (c) | CHRISTOPHER STOUFFLET, TROY SOBERT, ERIN RIGGINS, ANDRE D. SMITH, M.D. | 10/17/2003 | Received in Atlanta, GA, 90 doses Adipex-P 37.5 mg, prescribed by Andre D. Smith, M.D., dispensed to R.A.K., Atlanta, GA |

24. From in or about September 28, 2001 through at least

March 2003, defendant CHRISTOPHER STOUFFLET maintained bank accounts in the names and with the account numbers as listed in the chart below, which accounts were used to receive funds from sales of illegally distributed and dispensed controlled substances.

25. On or about the dates set forth below, in the Northern District of Georgia, defendant CHRISTOPHER STOUFFLET, aided and abetted by TROY SOBERT, ERIN RIGGINS, and by others known and unknown to the United States, knowingly engaged and attempted to engage in monetary transactions, by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit into and transfer of funds out of accounts set forth in the chart below, such property having been derived from a specified unlawful activity, that is, the illegal dispensing of controlled substances in violation of Title 21, United States Code, Sections 841(a), 843(b) and 846:

| Overt Act | Date | Amount | By | From Account | Payee | Re |
|---|---|---|---|---|---|---|
| (d) | 6/14/2002 | $100,000.00 | Chris Stoufflet | BoA 003279934618/ ck698 | Stoufflet Consulting | "start up funds" |
| (e) | 9/16/2002 | $15,000.00 | Chris Stoufflet | BoA 003279934618/ ck653 | Ron Stoufflet | |

| | | | | | | |
|---|---|---|---|---|---|---|
| (f) | 12/04/2002 | $10,966.85 | Chris Stoufflet | BoA003279934618/ck672 | Wolf Design Group | "invoice 1203" |
| (g) | 12/11/2002 | $20,000.00 | Chris Stoufflet | BoA 003279934618/ck673 | RAUAM Interiors | "deposit on drapes" |
| (h) | 9/24/2001 | $10,000.00 | Chris Stoufflet | Suntrust 813011494/ck923 | First American Title | |
| (i) | 9/28/2001 | $40,000.00 | Chris Stoufflet | Suntrust 813011494/ck924 | Emily's Interiors | "Design for Condo" |
| (j) | 1/08/2002 | $100,000.00 | Chris Stoufflet | Suntrust 813011494/ck945 | BoA (funds transfer) | Funds Transfer |
| (k) | 1/08/2002 | $100,000.00 | Chris Stoufflet | Suntrust 813011494/ck946 | BoA (funds transfer) | Funds Transfer |
| (l) | 4/09/2002 | $60,000.00 | Chris Stoufflet | Suntrust 813011494/ck976 | Coldwell Bankers | real estate earnest deposit |
| (m) | 4/09/2002 | $15,000.00 | Chris Stoufflet | Suntrust 813011494/ck979 | Clark Interiors | "floors" |
| (n) | 4/25/2002 | $30,000.00 | Chris Stoufflet | Suntrust 813011494/ck983 | Emily's Interiors | |

In violation of Title 18, United States Code, Sections 1957 and 2.

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO
### (Transactional Money Laundering)

26. The allegations in Paragraphs 1 through 25 are realleged and incorporated by reference.

27. From in or about September 28, 2001 through at least March 2003, defendant CHRISTOPHER STOUFFLET aided and abetted by others, maintained bank account number 813011494 at Suntrust in the name of Christopher Stoufflet, which account was used to receive funds from sales of illegally distributed and dispensed controlled substances.

28. On or about January 8, 2002, in the Northern District of Georgia, defendant CHRISTOPHER STOUFFLET, aided and abetted by others, knowingly engaged and attempted to engage in a monetary transaction, by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit into and transfer of funds out of accounts set forth in the chart below, such property having been derived from a specified unlawful activity, that is, the illegal dispensing of controlled substances in violation of Title 21, United States Code, Sections 841(a), 843(b) and 846:

| Date | Amount | By | From Account | Payee | Re |
|---|---|---|---|---|---|
| 1/08/2002 | $100,000.00 | Chris Stoufflet | Suntrust 813011494 /ck945 | BoA (funds transfer) | Funds Transfer |

In violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE NOTICE

29.   The allegations of paragraphs 1 through 28 of this Information are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 21, United States Code, Section 853, and Title 18 United States Code, Section 982.

30.   Pursuant to Rule 32.2(a) FED. R. CRIM. P., the defendant is hereby notified that, if convicted of the offense alleged above, the defendant shall forfeit to the United States pursuant to Title 21, United States Code, Sections 853, and Title 18, United States Code, Section 982(a)(1) his interest in any property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds obtained, directly or indirectly, as a result of such violation and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the violation, namely:

**Money Judgment**

A sum of money equal to $75 million in United States currency, representing the minimum amount of proceeds obtained as a result of the conspiracy to violate the Controlled Substances Act and to

commit money laundering, for which the defendant is individually liable.

31.  Pursuant to Title 21, United States Code, Section 853(p), and as incorporated by Title 18, United States Code, Section 982(b), the defendant shall forfeit substitute property, up to the value of the amount described in paragraph 27 if, by any act or omission of the defendant, the property described in paragraph 27, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred to or deposited with a third party; has been placed beyond the jurisdiction of the Court; or has been commingled with other property which cannot be divided without difficulty.

32.     All in accordance with Title 18, United States Code, Section 982(a)(1) and (b), and Rule 32.2(a), Federal Rules of Criminal Procedure.


DAVID E. NAHMIAS
UNITED STATES ATTORNEY

*[signature]*

RANDY S. CHARTASH
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 121760

*[signature]*

LAWRENCE R. SOMMERFELD
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 666936

600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
Telephone 404/581-6000
Facsimile 404/581-6181